Good morning, everyone, and welcome to the Ninth Circuit. I apologize for the delay. My fault, not their fault, not her fault, my fault. So today on calendar, we've got two cases. We have the first one, Malkonyan. I understand, counsel, you're going to split up your time? Yes, Your Honor. Okay, so what we're going to do then is Mr. Russell, eight hard minutes, meaning you don't have to worry about your two. If you go less than eight minutes, you get more than two. But if he starts going over time, we're going to cut him off because I want to make sure you get a chance. Are you going to go back-to-back or are you going to do rebuttal? What's your thinking on that? Okay, fair enough. All right, then we'll call the first case. One thing I always say when I'm about to do oral argument is in the Ninth Circuit, there's no extra credit for using all of your time. And what I mean by that is if you go up there and you make your points and you're not getting any questions and there's still time on the clock, it's okay to sit down. You're not compelled to use all of your time. And with that, we'll go ahead and call the first matter. So I guess it's going to be Mr. Russell first. Yes, Your Honor. Come on up. May it please the Court, I am Gregory Russell, attorney for Petitioner Malconian. Your Honors, in this case, there's been a manifest injustice committed that must be corrected. I'll start with some basic facts. The petitioner here, Malconian, arrived in the U.S. in 2003, and because his wife had been granted asylum, he was able to adjust status in 2008. However, prior to that, he committed two crimes. In 2004, PC-422, criminal threats. His wife and him were having an argument. He made a threat. Notably, though, that crime was not a CIMT until 2008 after he adjusted. So arguably, he did not have notice. Now, he also had a crime in 2008, working at a hotel. Allegedly, he stole a TV set. He says that he paid for it. Now, Your Honors, to illustrate the manifest injustice present here, let's consider two permanent residents. Both have committed CIMTs, just like the petitioner here. However, one goes on a cruise, the Love Boat Cruise to Ensenada. He returns after having a nice vacation, and he is detained under Section 101A13C5. He's treated as an inadmissible arriving alien. Now, the other permanent resident does not leave. He stays in the U.S., does not travel, and although both are residents and both committed CIMTs, the one who does travel is penalized for that travel. I might add that the right to travel is a fundamental right under Privileges and Immunities Clause of the U.S. Constitution. So we have a situation where someone is penalized for traveling. Your Honors, that is a due process issue. People should not be penalized for traveling. Was this argument you're making now, was that exhausted before the immigration courts? Your Honor, I did raise the issue of manifest injustice with the BIA that this is a miscarriage of justice because this section of the law is not fair. Did you mention the due process clause? No, we did not. I mean, it seems to me, and again, I don't want to limit your argument here, but there is an argument that I think you presented to the BIA that the BIA did not address about the rehabilitation provision. I think that was an argument that I think arguably you made, and we're going to be asking the government about it, I'm sure. And if the BIA did not address that argument, so that's one you raised and wasn't addressed, I think we have to send it back for the BIA to address it. So with the time you have left, I want to make sure you cover that because the issues you didn't argue below, those are tough ones for us to do anything about, but if you did argue something, this is your shot. Yes, Your Honor. So now we have the matter of collateral, which the BIA held that a similar situation to this, permanent resident commits a crime two years after residency, and he leaves, comes back, and again, he's treated as an inadmissible arriving alien under that same section 101. Now in that case, the defense counsel raised a fluity doctrine, which basically says, according to the U.S. Supreme Court, if a departure is brief, casual, and innocent, they should not be treated as arriving aliens. However, the BIA held, no, that's not true because the fluity doctrine does not apply. The fluity doctrine was pre-1996, pre-IIRA, when entry and admission were two separate issues. 1996, IIRA changed this whole entry and admission scenario, so now we're under the admission and removability spectrum. Now, I want to distinguish collateral from the present case. It's very important. Collateral represents a case where a resident commits a crime after they're resident. Here, that's not the case. Both crimes were committed before, so arguably, is this not an indication of arbitrariness? Why are we penalizing a permanent resident for crimes committed before he was a resident? I would assert that the reason we have this law is to deter conduct, prevent residents from committing crimes, and if they commit a crime and they try to come back in, yes, it applies, but that's not the case here. Both crimes were before he was adjustment. Your Honor, there's another issue here about the applications that were not submitted with the motion reopened. We would argue under Fonseca, the recent 2023 Ninth Circuit case, number 20-71977, that there is plenty of meat on the bones here for the BIA and for the immigration judge to reconsider this case. There's plenty of meat on the bones because we have all the relevant facts in the record. We know that the petitioner is married to a U.S. citizen and has been since 1990. We know that there's a hardship to the wife, cancer, stage 3 colon cancer, that's in the record. We know that there's an approved I-130. We know that there's a previously filed I-601. Counsel, 8 CFR 1003.2 C1 says that a motion to reopen for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation. Did you comply with that provision? No, we did not, Your Honor. So then why isn't that mandatory? Because the law does not state that. Under 8 USC, it says if necessary. Must doesn't mean must? Well, 8 USC, the law says that applications, if necessary, should be submitted. The regulation says they must be submitted, but the law says if necessary. It's not required under the law. So it's a regulation that imposed that rule, Your Honor. And there has been cases where it's been found that the applications are not necessary if they've already been submitted in the record. Your Honor, I want to cover one final issue, which is under Entomology v. Garland, 12-4-1013 from 2021. The court there, this court found that there was a manifest injustice because the petitioner there, Etomadi, had not been afforded the right to have his case adjudicated fairly. And in that case, similar to this one, there was many motions reopened. There was numerous cases where the courts did not look at all the facts and the arguments. And I believe this is a similar case. There's been many times when the BIA and the immigration judge have been able to look at this case. And one very important point is this individual is actually eligible for permanent resident cancellation of removal. Due to Perea in 2018, where the stop time rule was not in effect because of invalid NTAs, which is the case here, both NTAs in this petitioner's case are invalid because the time and the date are TBD. It invalidates the NTAs in this case. So under Perea, the stop time rule does not apply. So his time is still running. Because of Perea, the petitioner here is eligible for permanent resident cancellation of removal. He has not committed aggravated felonies. All right. Anything else? All right. Thank you very much, counsel. We'll hear from the government now.  Good morning, your honors. May it please the court. Jessica Strokas on behalf of the United States Attorney General. Your honors, this court should dismiss the petition for review under Section 242A2B1 because the board's denial of the motion to reopen for failure to establish prima facie eligibility for a waiver of inadmissibility under Section 212H1B is necessarily a judgment relating to the granting of discretionary relief under 212H. So counsel, I don't want to get in the way of your argument, but I want to get right to the point that Judge Owens raised. So first, the government did not argue in its brief, am I correct, that the BIA addressed the rehabilitation clause argument, right? Correct, your honor. So then tell me why we shouldn't apply the ordinary remand rule in this case to let the BIA in the first instance deal with the rehabilitation provision relief? Because petitioner did not raise that to the board in his motion. Okay, so I'm looking at ER11 and at ER11 petitioner cites and quotes from the relevant provision which ends with three little I's, the alien has been rehabilitated. And then on AR12, there's a statement 15 years has elapsed. So I mean, I agree this is raising it pretty lightly, but why doesn't citing the provision, which includes the word rehabilitated in it, and then talking about the 15 years, which is applicable to that provision, why isn't that sufficient to have under our case law to have raised that before the board? Your honor, it was entirely reasonable for the board in this case to look at the motion to reopen, which is functionally argued only the hardship to the alleged wife in this case, and look at the single piece of evidence submitted with the motion to reopen, which was a medical document regarding, again, the alleged wife, and find that or view this motion as raising the hardship section of section 212H1B. With respect, counsel, I don't think you're answering my question, which is they cite the rehabilitation provision on page 4, AR11, and then they talk about the 15 years for the convictions on page 5, AR12. Why isn't that sufficient for us to consider that this was raised and that the BIA needed to address it in the first instance? Your honor, I think that petitioner needed to have done more in his motion to reopen to actually raise under B1A. I think he needed to have actually made the argument about rehabilitation, not just reference the letters of the statute, and I would point out- But he did more than just reference the statute. As Judge Bennett just stated, he made the argument that 15 years had elapsed since he committed the acts that made him inadmissible. That's not just a recitation of the elements. That's saying, look, I qualify for this. Your honor, it's a recitation of the first subsection I, little I. Sure, but why isn't that enough to put the BIA then on notice that he is raising this argument? I mean, it's a recitation, as you just stated, of one of the elements of the provision. Because he didn't make any argument with respect to rehabilitation. Rehabilitation is a different subsection of that provision. So little I is activities for which the alien is inadmissible occurred more than 15 years before the date of the alien's application for a visa admission or adjustment of status. Three little I's is the alien has been rehabilitated. He made no argument with respect to rehabilitation. So counsel, would you agree that if we disagree with you and find that he sufficiently raised this to put the BIA on notice, and I understand your argument, but let's say we disagree, would you agree that we have to send it back to the BIA? I agree that that is one of the things that this court could do under the ordinary remand rule. However, I also believe that because there was absolutely nothing presented with the motion to reopen regarding rehabilitation, that it would be harmless error if the board did not. You didn't make that argument in your brief, though, correct? Correct. However, I still maintain that Section 212H is in and of itself discretionary. And then the subsection, what is it, H1B itself as well is discretionary. That was the provision that the petitioner substantially relied on in his motion to reopen to show the potential extreme hardship to his alleged United States citizen wife. And I say alleged because the board here pointed out that he had previously informed the board that he had divorced from his wife, and he presented no evidence with his motion to reopen that they had remarried other than statements of counsel. However, going back to this court's jurisdiction, the board's determination here, 212H is discretionary. 212H1B is discretionary. Under Patel, this court's jurisdiction is the consideration, only the consideration of legal and constitutional claims, which just have not been raised with respect to the waiver of inadmissibility. And all of the other arguments the petitioner has raised in their opening brief, and as well as on the opening argument, all of those issues are unexhausted. And while exhaustion is not jurisdictional, it is mandatory and respondent has properly invoked it in this case. So under Fort Bend County v. Davis, this court should take respondent's invocation of the administrative exhaustion requirement at face value and not consider any of those arguments that have been raised by petitioner that were not exhausted. So if there are no further questions, this court should dismiss the petition for review because petitioner is asking the court to review the factual and discretionary determination under section 212H, which constitutes a decision relating to the granting or denying of discretionary relief. All right, anything else? No, thank you. Thank you very much, counsel. Appreciate it. May it please the court, Judith Witt for the respondent on rebuttal. This case cries out for justice, Your Honors, because this person, Mr. Malkonian, Nurses Malkonian, has lived in the United States for many, many years as a lawful permanent resident. The issue regarding whether or not he's an arriving alien has been spoken about by my colleague and the government. I want to inform you about the facts of this case. The wife whom he remarried developed third stage cancer, colon cancer, and then they remarried after she was diagnosed, shortly within this brief time frame, they remarried in 2019. She became extremely dependent upon her husband when she was diagnosed with cancer and receiving oncology treatment. That is really the heart of this case, and so that's why I asked for a continuance to be able to assess the medical documents and file all the medical documents and file the requisite 212H waiver for her. The judge refused to continue the case. Once we got all the issue, she was like really needing this husband. They continued their relationship even after they got divorced, but when they got remarried, she definitely depended on him and then defended him in court and told the judge they've gotten remarried and she needs him now. The judge, I think, was a horrible miscarriage of justice insofar as the judge denied a continuance and denied the motion to reopen. You've already heard the arguments about arriving aliens. That's the large issue in this case, the tension between Collado and Ira. I'm sure that you've read the dissent by the former BIA Judge Rosenberg, a brilliant dissent, in which she says that actually Collado did not completely overrule Flutie, the U.S. Supreme Court case. The U.S. Supreme Court case of Flutie clearly asserts that a brief, innocent, and casual departure from the United States should not deprive the respondent of lawful permanent resident status. That's what we believe is the crux of this case. The case should be remanded and the case should be granted for 212-H. Thank you. All right, thank you very much, counsel. Thanks to both of you for rebriefing the argument in this case. This matter is submitted.
judges: OWENS, BENNETT, THOMAS